### WRYE *v.* THE STATE.

1. Where a homicide was committed with a knife under circumstances which would have made a case of voluntary manslaughter if it had appeared, either that there was an actual intention to kill, or that the weapon, considered in connection with the manner in which it was used, was of such character as that the law would conclusively imply the existence of such intention, yet where there was no evidence as to the size, length or kind of knife, other than what could be inferred from the nature of the wounds inflicted, and these were not such as to show that the knife must necessarily have been a deadly weapon; and where, under all the evidence and the statement of the accused, it was an open question whether or not the killing was voluntary or involuntary, the law of involuntary manslaughter should have been given in charge to the jury, especially where an appropriate request to this effect was presented in writing by counsel for the accused; and the failure to do so is cause for a new trial.

2. Except as above indicated, the case as presented by the record discloses no cause for reversing the judgment of the trial court.
   March 30, 1896.

Indictment for murder. Before Judge Gamble. Tattnall superior court. October term, 1895.

*Garrard, Meldrim & Newman, Hines & Hale* and *Lee & Giles,* for plaintiff in error. *B. D. Evans, Jr., solicitor-general,* by *J. A. Anderson,* contra.

ATKINSON, Justice.

The defendant, Wrye, was indicted for the offense of murder. Upon the trial, the evidence showed that as he was passing along near the place where the deceased was at work, the latter came out, advanced towards the accused, and as he reached him they became instantly engaged in an angry controversy, resulting in a personal conflict

in which the deceased was so severely stabbed that he died within a few days from the effects of the wounds inflicted. The wounds were inflicted with a knife, the size and character of which does not appear, nor does the description given of the wounds indicate that they must have been inflicted with a weapon likely to produce death. The wounds inflicted were described as follows: "The cause of his death was a stab wound in the left side, inflicted with some sharp instrument just back of the left breast, a little below a line drawn across the breast. That is the wound that he died from. His hand was also cut pretty bad—a flesh cut through the soft part, to the best of my recollection. I think it was the left hand, but I will not be positive. It struck the hand on the inside and passed through the back, cutting the skin in two places. The sharp instrument then penetrated the hand on the inside, just leaving small cuts through the skin on the back of the hand."

Upon the trial of the case, the defendant stated, in substance, that the deceased, without provocation, made a violent attack upon him upon the public highway, and being a much older and feebler man than the deceased, he was unable otherwise to resist the violence of the attack, and in order to escape from injury himself, and without any intention to kill the deceased, he inflicted the wounds described. Upon this state of the testimony, the court was requested, in writing, to charge the jury the law of involuntary manslaughter. This request was refused, and of this refusal complaint is made in this writ of error.

We are of the opinion that the court should have given in charge the law of involuntary manslaughter. If the theory of the defendant was true, that he was violently set upon upon the public highway by the deceased, and, though his life was not imperiled, he drew a weapon, which does not appear to have been one likely to produce death, or to have been used in such a manner as ordinarily to have produced such a result, and without any intent to take the

life of the deceased, he under such circumstances inflicted the wound which resulted in the death of the deceased, it cannot in any sense be treated other than as an involuntary homicide.   If he had used a weapon of such a character as would likely produce death and used it in such a manner as was calculated to produce that result and death followed, the law would have presumed the intent to kill, and the theory of involuntary manslaughter would have been eliminated.   But where both the felonious design and the use of a deadly weapon are wanting, a jury might well find that the killing was unintentional, though the accused intended to strike the blow which produced that result.

We are clear that, under the circumstances certified to us in the record in this case, the circuit judge erred in withholding from the jury the determination of the question as to whether the homicide was involuntary; and for this reason, the judgment is                    *Reversed.*