# CASES ARGUED AND DECIDED

IN THE

# Supreme Court of Georgia.

## OCTOBER TERM, 1893.

### BUTLER v. THE STATE.

1. Where two are tried jointly for a capital offence and neither waives his peremptory challenges, the State is entitled to half of the whole number which the law allows to both. Code, §4643.
2. There was no substantial error in charging the jury touching reasonable doubt, as follows: "Defendants in all criminal cases are presumed to be innocent until the contrary appears, and it is your duty to give the defendants the benefit of this presumption, and this presumption follows the defendants all through the trial and until the proofs satisfy the mind of the jury of the guilt of the accused beyond a reasonable doubt,—that is, a moral certainty. That does not mean that the State should demonstrate to a mathematical certainty the defendant's guilt; that would scarcely be possible in any human trial. It means that the evidence must be of such a character as to leave the minds of the jury settled as to the conviction of the defendant's guilt. It must not leave the minds of the jury wavering, unsettled, hesitating or unsatisfied, because if it does, the law says the defendant is entitled to that doubt, and to an acquittal. It does not, on the other hand, mean a vague, conjectural doubt, the doubt of a 'crank,' a doubt conjured up in the mind of any man. It means a doubt that grows out of the evidence in the case or the want of evidence. It means such a doubt as a juror would hesitate to act on in the most important business affairs of his own in the ordinary walks of life."
3. The homicide having been committed by shooting with a pistol, and the plaintiff in error being the person who fired it, there was, as against him, no error in charging thus: "If the State has shown to you by evidence, beyond a reasonable doubt, that either of these defendants killed the deceased, and that the other was present aiding and abetting it, then the law presumes that the killing.

was murder, and it is then incumbent on the defendant to show that such killing was not murder,—a lesser grade of homicide, or was justifiable"; the court having also charged that the mitigating facts would be available if shown by the State.

4. If the accused shot at his assailant in consequence of an assault which he did not provoke, and killed another person by bad shooting, the killing would be manslaughter if the assault was not such as would have justified killing the assailant. If it were such, it would be homicide by misadventure.

5. In view of the testimony and the charge of the court as given, the charge was incomplete without adding thereto as a part of the law of the case, irrespective of any request for instruction, something in substance to the following effect: "If the assault upon the accused was made with a weapon likely to produce death and in a manner apparently dangerous to life, the fact that the accused provoked the assault by opprobrious words would not put him in the wrong for resisting it so far as was necessary to his defence; and a seeming necessity, if acted on in good faith, would be equivalent to a real necessity."

6. Under the evidence in the record, the law of mutual combat was not applicable to the facts of the case, and the court erred in charging the jury on that subject.

October 9, 1893.

Indictment for murder. Before Judge BARTLETT. Morgan superior court. March term, 1893.

CALVIN GEORGE and H. T. LEWIS, for plaintiff in error.

H. G. LEWIS, solicitor-general, by HINES, SHUBRICK & FELDER, contra.

SIMMONS, Justice.

1. Ambrose and Charles Butler were indicted and tried jointly for murder. The court below, over objection by counsel for the accused, permitted counsel for the State to challenge peremptorily twenty of the jurors impaneled to try the case, holding that each defendant was entitled to twenty peremptory challenges and the State to half of the whole number allowed to both. This ruling is complained of in the motion for a new trial. Section 4643 of the code declares, that "Every person indicted for a crime or offence which may subject him or her, on conviction, to death, or four years' imprison-

ment, or longer, in the penitentiary, may peremptorily challenge twenty of the jurors impaneled to try him or her"; and this court has held that, by going to trial jointly, the defendants do not waive any right of peremptory challenge, but each is entitled to his full statutory allowance. (*Cruce* v. *The State*, 59 *Ga.* 83.) The same section of the code declares further, that "the State shall be allowed one half the number of peremptory challenges allowed to the prisoner." It does not appear that either of these defendants waived his full statutory allowance. The court, therefore, did not err in the number allowed counsel for the State.

2. It is complained that the court erred in charging that a reasonable doubt is "such a doubt as a juror would hesitate to act on in the most important business affairs of his own in the ordinary walks of life." This portion of the charge was given in connection with other instructions on the same subject, which are set out in the 2d head-note to this opinion; and taken as a whole, we think the charge on this subject is free from substantial error.

3. The homicide having been committed by shooting with a pistol, and the plaintiff in error being the person who fired it, there was, as against him, no error in charging as set out in the 3d head-note.

4. It is further complained that the court charged the jury as follows: "If the defendants shot, under the circumstances of an assault not provoked by them, at the assailant, and did not kill him but killed a bystander, they would be guilty of voluntary manslaughter, that is, provided one shot and the other was present aiding and abetting it." This was error. If, in consequence of an assault upon himself which he did not provoke, the accused shot at his assailant, but missed him and the shot killed a bystander, no guilt would attach to him if the assault upon him was such as would have

justified him in killing his assailant. In such case the killing would be homicide by misadventure. It would be otherwise if he shot carelessly and in reckless and wanton disregard of the danger resulting to the bystander; but there is no evidence in the record which would authorize the jury to find that this was the case here. The fact that the accused shot a bystander, without more, would not show it.

5. Complaint is made that the court, after charging the jury as set forth in the 7th, 8th and 9th grounds of the motion for a new trial, failed to add to and qualify these portions of the charge by further instructing the jury in effect as follows: If the assault upon the accused was made with a weapon likely to produce death and in a manner apparently dangerous to life, the fact that the accused provoked the assault by opprobrious words would not put him in the wrong for resisting it so far as was necessary to his defence; and a seeming necessity, if acted on in good faith, would be equivalent to a real necessity. No written request for such an instruction was made to the court, but in view of the testimony and of the charge as given, we think something to this effect should have been added as a part of the law of the case, and that the charge was incomplete without it. It appears from the evidence that at a supper given by one Long, Ambrose Butler, the plaintiff in error, had a dispute with Alex. Mitchell, a waiter, as to the amount he was to pay for what he had eaten; after which he left the house. He made some noise or disturbance outside, and Mitchell went out to him with a pistol in one hand and a stick in the other, cursed him and threatened to hit him with the stick "if he came back there cursing over his (Mitchell's) wife." Ambrose retorted that Mitchell's wife was "no more than any other damned bitch"; whereupon Mitchell struck him over the head with the stick—a banister two feet long and

two inches thick at the end. The force of the blow was such that the stick broke in two and flew out of Mitchell's hand. Mitchell then changed the pistol from his left hand to his right, and while he was doing this Ambrose shot at him, and the ball struck and killed Nelson Scott, a bystander. Shots were fired by Mitchell and by Charles Butler, the latter firing at Mitchell when Mitchell struck Ambrose with the stick. The jury acquitted Charles and found Ambrose guilty of voluntary manslaughter.

Under our code (§4694), opprobrious words may justify a simple assault or an assault and battery, but they do not justify an attack with a deadly weapon, made in a manner likely to produce death; and if such was the nature of the attack upon the plaintiff in error, and if the sole provocation thereto was his language to Mitchell, the latter was engaged in the commission of a felony upon him, against which he had the right to defend himself to the extent, if necessary, of taking his assailant's life. (Code, §4330.) Provocation of this kind not only does not justify a deadly assault, but is not such provocation as could be considered in mitigation, so as to reduce the assailant's guilt from murder to manslaughter, if the assault should prove fatal. "Provocation by words, threats, menaces or contemptuous gestures," says the code (§4325), "shall in no case be sufficient to free the person killing from the guilt and crime of murder." Of course, if the purpose of the plaintiff in error in his language and conduct on this occasion was to provoke an attack which should afford him a pretext for killing his assailant or inflicting serious bodily harm upon him, the necessity afterwards arising to kill in defence of his own life would not render the killing justifiable. The law will not hold him guiltless who thus creates the necessity to kill another. But if he had no such purpose as this, the fact that the

language he had used to his assailant was the occasion of the difficulty would not render him chargeable with having brought on the assault or created the necessity to kill, if it should appear that the attack upon him exceeded the provocation and was of such an aggravated character as to be without any legal justification or excuse. He would not be responsible for a result which, in the eyes of the law, was not a legitimate result of his words or conduct, and which, therefore, he was not legally bound to anticipate. One who insults another by opprobrious words may be bound to anticipate that the person insulted will repel the insult to the extent the law allows, but he is not bound to anticipate that the latter will go to the extent of attempting to take his life; and if such an attempt is made upon no greater provocation than this, and the person thus assaulted kills his assailant under a reasonable belief that it is necessary to do so in order to save his own life, it is neither murder nor manslaughter. Where it is said in the decisions of this court that before a homicide can be treated as justifiable it must appear that the slayer was "free from fault," or did not "provoke the difficulty," this is to be understood as meaning, not that he must not have done anything which might in the ordinary sense of the word be regarded as provocation, but that the provocation must not have been such as would in law be sufficient to justify the attack against which he was defending himself when the homicide was committed. Anything short of such provocation as this would not put the slayer in any degree in the wrong if it became necessary to kill in his own defence. This principle was applied in a case recently decided by this court, which was somewhat similar to the one before us. (*Boatwright* v. *The State*, 89 *Ga.* 140.) In that case it appeared that the deceased, under provocation of opprobrious words, attacked the accused with a stick; and

it was held that "Where a battery with a weapon likely to produce death was being committed by the deceased upon the slayer when the mortal blow was given, the fact that he provoked the battery by the use of opprobrious words would not put the slayer in the wrong for resisting it so far as was necessary to his defence; and a seeming necessity, if acted upon in good faith, would be equivalent to a real necessity." In the present case it was important that the jury should be so instructed that there might be no misunderstanding on their part as to the law on this subject; and the failure of the * court to so instruct them was error.

7. Under the evidence in the record, the law of mutual combat was not applicable to the facts of the case, and the court erred in charging the jury on that subject. The several errors mentioned, taken in connection with the case presented by the evidence, render it proper that a new trial should be granted.          *Judgment reversed.*